**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **CARLOS GÓMEZ-CRUZ, <u>et al.</u>,** | |
| **Plaintiffs,** | |
| **v.** | **CIVIL NO. 13-1711 (PAD)** |
| **MARTA E. FERNÁNDEZ-PABELLÓN, <u>et al.</u>,** | |
| **Defendants.** | |

**OPINION AND ORDER**

Delgado-Hernández, District Judge.

Plaintiffs initiated this action against defendants alleging violation of the First, Fifth, and Fourteenth Amendments, and state law.[1]  Before the court is defendants' "Motion to Summary Judgment" (Docket No. 61), which plaintiffs opposed (Docket No. 89).  Defendants replied (Docket No. 104), and plaintiffs sur-replied (Docket No. 113).  For the reasons below, the motion is GRANTED IN PART and DENIED IN PART.

## I.    BACKGROUND

In essence, plaintiffs allege that following the November 6, 2012 general elections during which the Popular Democratic Party ("PDP") took control of Puerto Rico's Executive Branch and by extension, of the Department of the Family ("DF"), they were dismissed, demoted, transferred and/or deprived of their functions and harassed on account of their political affiliation (Docket No. 4).  Defendants request that the action be dismissed by way of summary judgment, for in their view,

---

[1] Plaintiffs are Carlos Gómez-Cruz, Brendaliz González-Méndez, Caira Berly-Rivera, Mariely García-Ruiz, Amer Ortiz-López, María Vázquez-Mojica, and Jorge Morales-Velázquez.  Defendants are Marta Fernández-Pabellón, Vanessa Pintado-Rodríguez, Idalia Colón-Rondón, Elsa Rodríguez-Valentín, Laura Santa-Sánchez, Wilda Ramos-Román, Carmen Annette Beltrán, and Tamara Luciano-Fernández.

(1) plaintiffs failed to establish a *prima facie* case of political discrimination; and in the alternative, (2) that Mt. Healthy City School District Board of Education v. Doyle, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), the Eleventh Amendment, and Qualified Immunity warrant dismissal (Docket No. 61, Exh. 1).

## II.   STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The purpose of summary judgment is to pierce the pleadings and assess the proof in order to see whether there is need for trial.  Mesnick v. General Electric Co., 950 F.2d 816, 822 (1st Cir. 1991).

The party moving for summary judgment bears the initial responsibility of demonstrating the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A factual dispute is "genuine" if it could be resolved in favor of either party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  It is "material" if it potentially affects the outcome of the case in light of applicable law.  Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004).

As to issues on which the nonmovant has the burden of proof, the movant need to no more than aver absence of evidence to support the nonmoving party's case.  Celotex Corp., 477 U.S. at 325; Mottolo v. Fireman's Fund Ins. Co., 43 F.3d 723, 725 (1st Cir. 1995).  All reasonable factual inferences must be drawn in favor of the party against whom summary judgment is sought. Shafmaster v. U.S., 707 F.3d 130, 135 (1st Cir. 2013).

## III.   DISCUSSION AND RELEVANT FINDINGS OF FACT

### A. First Amendment

To establish a *prima facie* of political discrimination under the First Amendment, the plaintiff is required to demonstrate that: (1) plaintiff and defendant have opposing political affiliations, (2) defendant is aware of plaintiff's affiliation, (3) an adverse employment action occurred, and (4) political affiliation was a substantial or motivating factor for the adverse employment action. Reyes-Orta v. Puerto Rico Highway and Transp. Authority, 811 F.3d 67, 73 (1st Cir. 2016)(quoting Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 13 (1st Cir. 2011)(other internal citations omitted)).

Defendants argue that even assuming plaintiffs proffered enough facts to establish the first and third prongs of the *prima facie* standard,[2] the record is devoid of evidence allowing them to establish the second and fourth factors, to wit: defendants' knowledge of political affiliation, and that such affiliation was a substantial or motivating factor for the adverse employment actions here (Docket No. 61, Exh. 1).

### 1. Carlos Gómez-Cruz

Gómez-Cruz began working in the Department of Family in February 2009 as an Assistant Administrator for Finance and Budget. See, Defendants' Statements of Uncontested Material Facts "DSUMF," Docket No. 63, Exh. 1 at ¶ 10.[3] On September 4, 2012, he was appointed to a career position as Budget Director of the DF's Administration for the Socioeconomic Development

---

[2] Because defendants so concede, for purposes of this Opinion and Order the court assumes as much.

[3] Plaintiffs qualified this statement.  Review of Gómez-Cruz' deposition correctly supports it as drafted by defendants. To that end, when asked what his role was when he started working on February 2009, Gómez-Cruz answered he was the assistant administrator for finance and budget. See, Docket No. 61, Exh. 4 at p. 10.

of the Family ("ADSEF") and began his probatory period, which was set to conclude on March 3, 2013.  See, Plaintiffs' Additional Statements of Uncontested Material Facts "PSUMF," Docket No. 83 at ¶ 107; DSUMF at ¶¶ 12-13.  Before his probatory period ended, he was handed a dismissal letter by Carmen Beltrán, and was advised of his right to seek redress from the Appellate Commission.  He appealed the dismissal.  That case is pending.  DSUMF at ¶¶ 1-5.

In turn, Beltrán started working at ADSEF on February 1, 2013.  DSUMF at ¶ 8.  Prior to handing the termination letter to Gómez-Cruz, he did not know Gómez-Cruz, and had not interacted with him between February 1, 2013, and the day in which he handed the letter.  DSUMF at ¶¶ 9 and 11.  Beltrán was not involved in the decision-making process to terminate Gómez-Cruz. DSUMF at ¶ 7.[4]  Moreover, Gómez-Cruz never told Beltrán about his political affiliation, nor has the latter made any such inquiry.  In fact, Gómez-Cruz and Beltrán have never talked about politics. DSUMF at ¶¶ 22-24.

Gómez-Cruz never expressed his political affiliation to Fernández-Pabellón.  DSUMF at ¶ 15.[5]  And he never expressed his political affiliation to Pintado-Rodríguez, who likewise, never asked Gómez-Cruz about his political affiliation.  DSUMF at ¶¶ 16-17.  Gómez-Cruz has never expressed his political affiliation to Colón-Rondón.  DSUMF at ¶ 18.

Gómez-Cruz does not know who Rodríguez-Valentín, Santa-Sánchez, or Ramos-Román are.  He first heard of them when he read the complaint filed in this action.  DSUMF at ¶¶ 19-21.

---

[4] Plaintiffs denied this statement proffering a series of allegations (Docket No. 85 at p. 2), none of which properly contradicts defendants' statement.  On this basis, it is accordingly deemed admitted.

[5] Plaintiffs qualified this argument by claiming that although Gómez-Cruz never expressed his political affiliation directly to Fernández-Pabellón, she knew about it "through other means."  This is insufficient to contradict defendants' statement.  See, Ríos-Jiménez v. Principi, 520 F.3d 31, 42 n. 7 (1st Cir. 2008)(holding that "[s]ummary judgment cannot be defeated by relying on such conclusory allegations"); see also, Local Rule 56(e) requiring the opposing party to support each denial with a record citation.

Gómez-Cruz v. Fernández-Pabellón, et al.
Civil No. 13-1711 (PAD)
Opinion and Order
Page 5

Other than once telling Luciano-Fernández about his previous work as a polling officer, Gómez-Cruz never told Luciano-Fernández about his political affiliation.  DSUMF at ¶¶ 29-30; PSUMF at ¶ 274.  Fernández-Pabellón does not presently identify herself with any political party, and has not done so since the early 1980's.  DSUMF at ¶¶ 31-32.

Plaintiffs contend that, albeit Gómez-Cruz never told Fernández-Pabellón about his political affiliation, she must be so aware because he had occupied a trust position with the preceding administration, and she was present during the transition hearings in which Gómez-Cruz participated.  See, Gómez-Cruz' deposition, Docket No. 83, Exh. 15 at pp. 41-42.  Also, they aver that Luciano-Fernández knew of Gómez-Cruz' previous work as a polling officer.  PSUMF at ¶ 274.

These facts are insufficient to establish that Fernández-Pabellón, Pintado-Rodríguez, Rodríguez-Valentín, Santa-Sánchez, Ramos-Román, Annette Beltrán, and Luciano-Fernández had knowledge of Gómez-Cruz' political affiliation.  A plaintiff may not establish knowledge by merely showing that he "held a trust/confidential/policymaking position in the outgoing administration." See, Román v. Delgado Altieri, 390 F.Supp.2d 94, 103 (D.P.R. 2005)(citing González-De-Blasini v. Family Dept., 377 F.3d 81, 85-86 (1st Cir. 2004).  The fact that Gómez-Cruz worked as a polling officer during elections is not enough.  See, Marrero-Saez v. Municipality of Aibonito, 756 F.Supp.2d 215, 223-224 (D.P.R. 2010)("Plaintiff cannot prove that defendants had knowledge of [his] political affiliation merely through testimony of having been seen, or, for that matter, met during routine campaign activity participation").  Similarly, that Gómez-Cruz suffered an adverse employment action shortly after a change in administration is not sufficient to show that defendants must have been aware of her political affiliation.  Id.

In the end, Gómez-Cruz failed to point out to any evidence on record that would permit a reasonable jury to conclude that these defendants were aware of his political affiliation.   On this basis, his claims against Fernández-Pabellón, Pintado-Rodríguez, Rodríguez-Valentín, Santa-Sánchez, Ramos-Román, Beltrán, and Luciano-Fernández must be dismissed.  See, González de Blasini v. Dept. de la Familia, 377 F.3d 81, 85-86 (1st Cir. 2004)(holding that "lack of knowledge of plaintiffs' political affiliation must lead to entry of summary judgment").  After evaluating the facts set forth by Gómez-Cruz in support of his claims against Colón-Rondón, however, the court finds a genuine issue exists as to whether that defendant personally knew Gómez-Cruz or was aware of his political affiliation.

According to plaintiffs, Colón-Rondón met Gómez-Cruz after the former was appointed Secretary of the Department of Family, visited Gómez-Cruz' office, and asked him what position he occupied.  When Gómez-Cruz told her he used to occupy a trust position but had since been named to a career position, Colón-Rondón allegedly stated: "how many former trust employees in career positions was I left with by the past administration!"  PSUMF at ¶ 270.  Defendants deny this statement, and posit that Colón-Rondón does not know Gómez-Cruz or his political affiliation (Docket No. 107 at ¶ 270).  Both Gómez-Cruz and Colón-Rondón rely on their corresponding depositions in support of their statements.  Which of the versions is correct is a matter beyond the scope of summary judgment.  See, Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 150-52, 120 S.Ct. 2097, 2110-2011 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge").  In consequence, Gómez-Cruz' claims against Colón-Rondón will not be dismissed on that ground at this juncture.

## 2. ADFAN

On December 18, 2009, then-Governor Luis Fortuño-Burset enacted Law No. 186, also known as the Comprehensive Adoption Proceedings Reform Act. PSUMF at ¶ 10. Under Law No. 186, the former Secretary of the DF issued Administrative Orders Nos. 2010-04 and 2010-05, pursuant to which an Adoption Center was created. PSUMF at ¶ 12. The Adoption Center was located on the fifth floor of the central offices of the DF and the Administration for Families and Children ("ADFAN"). PSUMF at ¶ 62. It was created to, among other things, expedite the process in cases where a child was deemed ready for adoption with a qualified individual. PSUMF at ¶ 68. Also created was *Posada Amor y Vida* ("the Shelter"), a temporary housing unit for children that were removed from their homes. PSUMF at ¶ 70. Both the Adoption Center and the Shelter were ascribed to ADFAN. PSUMF at ¶ 66.[6]

### a. ADFAN Plaintiffs

Plaintiffs González-Méndez, Berly-Rivera, García-Ruiz, and Morales-Velázquez worked at the DF under the previous administration. PSUMF at ¶¶ 74-77, 81-83, 85-88, 102. They occupied trust positions but were later appointed to career positions at the Adoption Center or the Shelter. PSUMF at ¶¶ 79-80, 83, 89, 103. After occupying several positions within the DF, on August 28, 2012, Ortiz-López was appointed as a Social Work Specialist in the Department. PSUMF at ¶¶ 90-94. Vázquez-Mojica began working in the DF in June 1998. PSUMF at ¶ 97. She began working in the Adoption Center in 2010, and completed her probatory period as Specialist in Social Work on July 11, 2011. PSUMF at ¶¶ 98-99.

---

[6] And thus, the court will hereinafter refer to these plaintiffs as the "ADFAN plaintiffs."

     b.   <u>Elections, Evaluation and Results</u>

On November 6, 2012, Alejandro García-Padilla, running on the PPD ticket, won the general elections.  PSUMF at ¶ 123.  On December 26, 2012, he announced the appointment of Colón-Rondón as Secretary of the DF.  PSUMF at ¶ 127.  After her appointment, Colón-Rondón requested that Pintado-Rodríguez perform an evaluation of the Adoption Center.  PSUMF at ¶¶ 154-155.  Pintado-Rodríguez then instructed Ramos-Román to evaluate whether the appointments of the employees working in the Adoption Center and Shelter complied with applicable regulations.  PSUMF at ¶ 156.

In turn, Ramos-Román, requested Mrs. Soto-Meléndez' assistance to examine the appointments of employees working at the Adoption Center.  After concluding her analysis, Soto-Meléndez did not find anything preventing the former Secretary from creating the Adoption Center or the Shelter.  PSUMF at ¶¶ 165-167.  The evaluation written by Ramos-Román does not recommend the closing of the Adoption Center.  PSUMF at ¶ 195.  The report generated by Human Resources concluded that the positions for the Adoption Center and the Shelter were created in accordance with the applicable procedures existing at the time.  PSUMF at ¶ 196.

Rodríguez-Valentín also made an evaluation, which focused solely on the Shelter.  PSUMF at ¶ 197.  There, she recommended that it be eliminated.  PSUMF at ¶ 198.  Rodríguez-Valentín did not, however, issue any opinion pertaining to the appointments or recruitment procedure followed when employing personnel at the Shelter.  PSUMF at ¶ 200.  On April 29, 2013, Colón-Rondón signed Administrative Order No. 2013-07, pursuant to which the Administrative Orders Nos. 2010-04 and 2010-05 were repealed, and the closing of the Adoption Center was ordered.  PSUMF at ¶¶ 214-215.  Between April 29 and April 30, 2013, González-Méndez, Ortiz-López, García-Ruiz, Berly-Rivera, Morales-Velázquez, and Vázquez-Mojica were notified that their appointments had

been annulled.  DSUMF at ¶¶ 85, 101, 116-117, 130-131, 166, and 167; PSUMF at ¶ 222.  Plaintiffs posit these actions were taken on account of their political affiliation.

The record demonstrates that neither González-Méndez, Ortiz-López, García-Ruiz, Berly-Rivera, Morales-Velázquez, nor Vázquez-Mojica ever discussed their corresponding political affiliations with Fernández-Pabellón (DSUMF at ¶¶ 89, 106-107, 122, 135, 149, 176-177); with Beltrán (DSUMF at ¶¶ 98, 112, 128, 141, 161, 183); or with Luciano-Fernández (DSUMF at ¶¶ 99, 113, 129, 142, 163, 184).  Nor did these defendants inquire upon this matter.  Id.  And plaintiffs did not point out to any evidence on record that could establish that these defendants were so aware.[7]  Accordingly, they failed to establish a *prima facie* case as to these defendants such that their claims against them must be dismissed.

González-Méndez, Ortiz-López, and García-Ruiz challenge defendants' statements that Santa-Sánchez was not aware of their political affiliations.  See, DSUMF at ¶¶ 96, 110, 126.[8]  To that end, they refer to their discussion in Docket No. 85 at ¶ 100, which in their view, contains sufficient facts to establish that Santa-Sánchez was so aware.  But the facts included at Docket No. 85, ¶ 100 only mention Santa-Sánchez twice: (1) to name her position as the Deputy Secretary of Human Resources and Labor Relations of the DF; and (2) to establish that she is a supporter of the Puerto Rico Independence Party and worked as an electoral polling officer for that party in previous elections.  Id.  These facts, however, are insufficient to establish that Santa-Sánchez was aware of González-Méndez', Ortiz-López', and García-Ruiz' political affiliations.  Faced with a

---

[7] In fact, Ortiz-López, García-Ruiz, Berly-Rivera, Morales-Velázquez, and Vázquez-Mojica do not know who Beltrán or Luciano-Fernández are, and first heard of their names while reading the complaint (DSUMF at ¶¶ 112-113, 128-129, 141-142, 162, 164, 183, 184).  González-Méndez only learned about Luciano-Fernández when reading the complaint.  See, DSUMF at ¶ 99.

[8] These plaintiffs concede not knowing Santa-Sánchez, or having engaged in any communication with her.  See, DSUMF at ¶¶ 139, 157-158, and 181.

motion for summary judgment, these plaintiffs failed to meet their burden to establish a trial-worthy claim of material fact.  Therefore, their claims against Santa-Sánchez must be dismissed.

The ADFAN plaintiffs contest defendants' statement that Ramos-Román was not aware of their political affiliation.  See, DSUMF at ¶¶ 97, 111, 127, 140, 159-160, 181, and 212.  Their challenge is predicated on the discussion included in Docket No. 85 at ¶ 100.  But the statements contained therein, as they pertain to Ramos-Román, are insufficient to properly controvert defendants' well-supported facts.[9]  In fact, they concede that after concluding his evaluation, Ramos-Román found that their appointments as well as the creation of the Adoption Center and the Shelter were legitimate.  And Ramos-Román did not recommend that such positions be eliminated.  Given these circumstances, these plaintiffs' claims against Ramos-Román must be dismissed.

Nevertheless, after carefully evaluating the record the court finds that issues of material facts preclude summary judgment in connection with the ADFAN plaintiffs' claims against Colón-Rondón, Pintado-Rodríguez, and Rodríguez-Valentín.  These plaintiffs and defendants all worked in a fairly small work environment.  PSUMF at ¶¶ 62-67.  The facilities were located within the Central Offices of the DF, and were in close contact with Colón-Rondón.  PSUMF at ¶ 66.  In fact, the doors of the Adoption Center were located proximate to the doors of Colón-Rondón's office.  PSUMF at ¶ 62-64.  During January 2013, the Christmas tree located at the Human Resources Office was

---

[9] Specifically, those facts establish that (1) Ramos-Román was appointed Auxiliary Administrator for Human Resources in ADFAN; (2) he is affiliated with the PDP; (3) along with other defendants, he did nothing after González-Méndez complained about being deprived of her secretary; (4) he was instructed to evaluate the legality of the ADFAN plaintiffs' appointments; (5) he was in possession of González-Méndez' personnel file; (6) he met with the Deputy Director of ADFAN and the Director of the Office of Legal Affairs to discuss the legality of the appointments; (7) he concluded that there was nothing preventing the former Secretary from creating the Adoption Center and the Shelter; (8) he found that such appointments had all the required external authorizations as required by law; (9) he did not recommend nullifying the ADFAN plaintiffs' appointments or closing the Adoption Center; (10) he determined that such appointments had been made in accordance with the norms and regulations current at the time; and (11) it was during a meeting with Ramos-Román and Rodríguez-Valentín that plaintiffs received the letters informing them that their appointments were annulled (Docket No. 85 at ¶ 100).

decorated with straw hats ("pavas") – the logo pertaining to the PPD.  PSUMF at ¶ 130.[10]  Also during that period, the ADFAN plaintiffs encountered several employees affiliated with the PDP chanting politically-charged phrases such as "we came to clean the house," and "we are red with happiness," among other statements.  PSUMF at ¶¶ 132, 136.

In another instance, plaintiff González-Méndez heard Pintado-Rodríguez call Rodríguez-Valentín and tell her to check the "mini NPP committee" (referring to the Adoption Center), to see what was happening, at which time Rodríguez-Valentín entered the Adoption Center and asked if everything was ok.  PSUMF at ¶ 140.[11]  During a meeting, Rodríguez-Valentín told Berly-Rivera that the previous administration, to which she belonged, had made many mistakes.  See, PSUMF at ¶ 138.  This contrasts with defendants' statement that Rodríguez-Valentín was not aware of Berly-Rivera's political affiliation.  See, Docket No. 107 at ¶ 138.  Further, employees at the DF affiliated with the NPP were required to sign the visitor's registry, whereas those affiliated to the PDP were not.  PSUMF at ¶ 131.

The record depicts a small, politically-charged work environment, where either directly or indirectly, the ADFAN plaintiffs' political affiliations were known.  See, Peguero-Moronta v. Santiago, 464 F.3d 29, 48 (1st Cir. 2006)(finding that in light of plaintiffs' evidence of relatively small workplace, a reasonable jury could conclude that their political affiliation of plaintiffs was

---

[10] Defendants denied this statement, arguing that the straw hats "are an emblem of Puerto Rican culture and are frequently used during the Christmas season" and because the statement finds support in plaintiffs' answer to the interrogatories, which, in their view, constitute inadmissible hearsay.  Reviewing the statement in light most favorable to plaintiffs together with the fact that the workplace reflected a strong political environment, and considering that the hats indeed constitute the logo of the PPD, defendants' argument is misplaced.  In addition, contrary to defendants' contention answers to interrogatories are admissible for purposes of summary judgment.  See, Garside v. Osco Drug, Inc., 895 F.2d 46, 49 (1st Cir. 1990)(finding that, "[i]n summary judgment proceedings, answers to interrogatories are subject to exactly the same infirmities as affidavits").  To the extent defendants failed to properly contest this statement, the same is deemed admitted.

[11] Defendants denied this statement on the ground that it was based on an answer to an interrogatory.  For the reasons pointed out above, the statement is deemed admitted.

sufficiently well-known and the defendants were aware); Ocasio-Hernandez v. Fortuño-Burset, 777 F.3d 1, 7 (1st Cir. 2015)(holding that "circumstantial evidence can suffice to show a defendant's knowledge of a plaintiff's political party"); Rodríguez-Ríos v. Cordero, 138 F.3d 22, 24 (1st Cir. 1998)(recognizing that although a highly charged political atmosphere alone cannot support an inference of discriminatory animus, when coupled with "the fact that plaintiffs and defendants are of competing political persuasions, may be probative of discriminatory animus"). As a result, defendants' request that such claims be dismissed must be denied.

   B. Mt. Healthy

   Defendants invoke Mt. Healthy. Because the court previously found Gómez-Cruz had sufficient evidence to establish a *prima facie* case under the First Amendment against Colón-Rondón; and so did the ADFAN plaintiffs as to Colón-Rondón, Pintado-Rodríguez, and Rodríguez-Valentín, the burden shifts to those defendants to show that "(i) they would have taken the same action in any event; and (ii) they would have taken such action for reasons that are not unconstitutional." Reyes-Orta, 811 F.3d at 73 (quoting, Vélez-Rivera v. Agosto-Alicea, 437 F.3d 145, 152 (1st Cir. 2016); Mt. Healthy, 429 U.S. at 286-87)).

   The "key inquiry" is whether defendants can show they had a lawful reason not to renew the appointments, and that they would have relied on that reason even without considering plaintiffs' political affiliation. Reyes-Orta, 811 F.3d at 77 (so noting). Yet it is apparent that a genuine dispute exists as to Colón-Rondón's reasons for the non-approval of Gómez-Cruz' probatory period, as that plaintiff has adequately cast doubts on the credibility of the theories or explanations that Colón-Rondón has put forward in support of her decision. While defendants posit the reason behind Gómez-Cruz' non-approval was not politically motivated, plaintiffs have presented evidence that, if believed will demonstrate that (i) Gómez-Cruz' probatory period was

not approved following the change in political administration in the Department of Family from the NPP to the PDP; and (ii) Colón-Rondón purportedly made remarks pertaining to the amount of former trust employees in career positions that the past administration had named.  Which version of the events the jury will choose to believe, is for the jury to decide.

In the same way, the ADFAN plaintiffs provided sufficient facts to challenge the grounds that Colón-Rondón's, Pintado-Rodríguez', and Rodríguez-Valentín's asserted for their termination. They proffered evidence showing (i) they are members of the NPP while these defendants are members of the PDP; (ii) following the elections, they were harassed after their workplace became politically-charged; and (iii) after the change in administration, their positions were annulled.  As such, Mt. Healthy does not support dismissal.

   C.   Fourteenth Amendment[12]

Defendants request that the ADFAN plaintiffs' fourteenth amendment claims be dismissed under the Parratt-Hudson doctrine, for in their view, they could have availed themselves of an adequate post-deprivation remedy, but failed to do so.[13]  They assert González-Méndez, Berly-Rivera, Ortiz-López, Vázquez-Mojica, and Morales-Velázquez were notified of their right to appeal the determination before the Public Service Appeals Commission; while García-Ruiz was advised that she could file a grievance before the Committee of Grievances.  However, only García-Ruiz and Morales-Velázquez chose to so proceed.  The ADFAN plaintiffs counter that such doctrine is inapplicable here, insofar as defendants' actions resulting in the nullification of plaintiffs' appointments were not random or unauthorized.

---

[12] The court previously dismissed Gómez-Cruz claims under the Fourteenth Amendment on the ground that, at the time of his termination, he was a probationary employee and thus had no right to notice and pre-termination hearing (Docket No. 52 at p. 6).  For the same reason, it will refrain from revisiting that issue here.

[13] See, Parratt v. Taylor, 451 U.S. 527 (1981), and Hudson v. Palmer, 468 U.S. 517 (1984).

Pursuant to the Parratt-Hudson doctrine and its progeny, "where an injury has been caused not by a state law, policy, or procedure, but by a random and unauthorized act that can be remedied by state law, there is no basis for [federal court] intervention under § 1983, in a suit alleging only a procedural due process claim." Montañez-Allman v. García-Padilla, 782 F.3d 42, 46 (1st Cir. 2015)(citing San Gerónimo Caribe Project, Inc. v. Acevedo-Vilá, 687 F.3d 465, 480-81 (1st Cir. 2012). A government official has committed a random and unauthorized act when he or she misapplies state law to deny an individual the process due under a correct application of state law. See, O'Neill v. Baker, 210 F.3d 41, 50 (1st Cir. 2000)(so noting).

The logic behind this doctrine is that since the deprivation is caused by an official's misstep, no hearing or other process would be effective in preventing that official's mistake. See, Parratt, 451 U.S. at 539 (finding that post-deprivation remedies are constitutionally sufficient when there is "the necessity of quick action by the State or the impracticality of providing any meaningful pre-deprivation process"). Conversely, the doctrine is inapplicable where "[t]he State delegated to [the state actors] the power and authority to effect the very deprivation complained of ... and also ... the concomitant duty to initiate the procedural safeguards." Zinermon v. Burch, 494 U.S. 113, 138 (1990).

In passing Administrative Order No. 2013-07, which resulted in the closing of the Adoption Center and the Shelter, as well as the annulment of the ADFAN plaintiffs' positions, Colón-Rondón exercised broad powers as the Secretary of the DF. See, P.R. Laws Ann. tit. 3 § 211(c)(d), authorizing the Secretary to "[p]rescribe, repeal and amend norms and regulations for the operation of the Department and its programs." In these circumstances, the Parratt-Hudson doctrine does not operate to require dismissal. See, Zinermon, 494 U.S. at 138 (finding that conduct could not be

said to be "unauthorized" when state had delegated broad discretion to state officials).  For the same reason, Parratt-Hudson does not require dismissal.

D.  Qualified Immunity

Defendants argue they are protected by qualified immunity.  Qualified immunity is an affirmative defense that operates as "a shield against unwarranted charges that the official violated the Constitution in the course of performing the functions of the office." Garnier v. Rodriguez, 506 F.3d 22, 26 (1st Cir. 2007)(internal citation omitted).  Whether defendants are entitled to qualified immunity, calls for a two-part analysis.  Ford v. Bender, 768 F.3d 15, 23 (1st Cir. 2014); Vázquez-Burgos v. Rodriguez-Pérez, 2015 WL 1578694, *1 (D.P.R. April 9, 2015)(same).  First, the court must inquire, whether the facts, taken most favorably to the party opposing summary judgment, make out a constitutional violation.  Ford, 768 F.3d at 23.  Second, "whether the violated right was clearly established at the time that the offending conduct occurred." Id.

The First Amendment proscribes subjecting government employees to adverse employment actions on account of their political affiliation.  Rutan v. Republican Party of Illinois, 497 U.S. 62, 64-65 (1990).  And, as previously explained, there is a factual issue as to whether Gómez-Cruz' and the AFDAN plaintiffs' political affiliation played any part in their termination.  See, Prokey v. Watkins, 942 F.2d 67, 73 (1st Cir. 1991)(noting that when only a fact finder's determination of the conflicting evidence as to the underlying historical facts will permit resolution of the qualified immunity issue, summary judgment ceases to be an appropriate vehicle).  So summary judgment based on qualified immunity would be inappropriate.  Accordingly, defendants are not entitled to qualified immunity at this stage.

E. Eleventh Amendment Immunity

Defendants posit that to the extent plaintiffs' claims can be construed as requesting monetary damages against defendants in their official capacities, such claims should dismissed on eleventh amendment grounds. Plaintiffs did not respond. This argument was previously raised by way of defendants' motion to dismiss (Docket No. 13). In their opposition, plaintiffs clarified they were not seeking monetary damages (Docket No. 25, Exh. 1 at p. 31). Based on those representations, defendants' request for dismissal on eleventh amendment grounds was denied (Docket No. 52 at p. 6). Therefore, the court need not readdress that issue.[14]

F. Puerto Rico Constitution and Law

To the extent defendants ask for dismissal of plaintiffs' state claims based on the assumption that the court would dismiss all of the federal claims, their request must be denied.

## IV.   CONCLUSION

In light of the foregoing, defendants' "Motion to Summary Judgment" (Docket No. 61) is GRANTED IN PART AND DENIED IN PART as follows:

- Gómez-Cruz' claims against Fernández-Pabellón, Pintado-Rodríguez, Rodríguez-Valentín, Santa-Sánchez, Ramos-Román, Annette Beltrán, and Luciano-Fernández are DISMISSED. The claims against Colón-Rondón remain.

- González-Méndez', Berly-Rivera's, García-Ruiz', Ortiz-López', Vázquez-Mojica's, and Morales-Velázquez' first amendment claims against Fernández-Pabellón, Santa-Sánchez, Beltrán, Luciano-Fernández, and Ramos-Román are

---

[14] At any rate, insofar as the DF is considered to be an arm of the state for purposes of the eleventh amendment, plaintiffs are barred from asserting claims for monetary relief against defendants in their official capacity. See, Rivera v. Departamento de la Familia, 2006 WL 852066, at *4 (D.P.R. Mar. 28, 2006)(dismissing on eleventh amendment grounds claims for monetary damages against the Commonwealth of Puerto Rico, and the Department of the Family, and, individual defendants sued in their official capacities).

<u>Gómez-Cruz</u> v. <u>Fernández-Pabellón, et al.</u>
Civil No. 13-1711 (PAD)
Opinion and Order
Page 17

DISMISSED.   Their first amendment claims against Colón-Rondón, Pintado-Rodríguez, and Rodríguez-Valentín, remain.

- Plaintiffs' fourteenth amendment claims against Colón-Rondón, Pintado-Rodríguez, and Rodríguez-Valentín, remain.

**SO ORDERED**.

In San Juan, Puerto Rico, this 31st day of March, 2016.

<u>S/Pedro A. Delgado-Hernández</u>
PEDRO A. DELGADO-HERNÁNDEZ
United States District Judge