UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| CARLOS GÓMEZ-CRUZ, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 3:13-cv-01711-JAW |
| | ) | |
| MARTA E. FERNÁNDEZ-PABELLÓN et al. | ) ) | |
| | ) | |
| Defendants. | ) | |

**ORDER REGARDING AUTOMATIC STAY AND GRANTING MOTION FOR REIMBURSEMENT**

A party to a settlement agreement seeks an order directing the Commonwealth of Puerto Rico to reimburse him for an overpayment in relation to the agreement. The Court concludes that the PROMESA Title III stay does not apply to the Government's refund of an overpayment stemming from the disbursement of a settlement agreement reached before the commencement of the Commonwealth's Title III case. The Court concludes that the stay does not bar the Plaintiff's request for reimbursement and the Court orders the Commonwealth to reimburse Mr. Gómez-Cruz $901.32.

**I. BACKGROUND**

**A. Procedural Background**

On September 19, 2013, Carlos Gómez-Cruz filed a complaint against Marta E. Fernández-Pabellón, et al, in the District of Puerto Rico, alleging political discrimination and retaliation in violation of the First, Fifth, and Fourteenth Amendments to the United States Constitution and in violation of the Constitution

and the laws of the Commonwealth of Puerto Rico, and seeking compensatory and punitive damages as well as equitable relief. *Compl.* at 26-29 (ECF No. 1). All the Defendants were sued in both their official and individual capacities. *Id.* On December 28, 2016, the Court entered judgment incorporating and approving a settlement agreement submitted by the parties. *J.* (ECF No. 180).

On February 24, 2017, the Defendants filed a motion for consignment of funds and on the same day, the Plaintiffs filed a motion for disbursement of funds requesting that the Defendants disburse the funds differently. *Defs.' Mot. for Consignment of Funds* (ECF No. 182); *Pl's. Mot. for Disbursement of Funds* (ECF No. 184). On March 14, 2017, the Plaintiff filed a motion reiterating its motion for disbursement of funds. *Mot. Reiterating Req. for Disbursement of Funds* (ECF No. 186) (*Reiterating Mot.*). On March 16, 2017, the Court granted both motions. *Order* (ECF No. 187).

On March 9, 2018, the Plaintiffs filed a motion requesting an order to reimburse Mr. Gómez-Cruz for the amount overpaid to the Center for the Collection of Municipal Revenues (CRIM). *Mot. Requesting Order* (ECF No. 192) (*Pl's. Mot.*). On March 15, 2018, the Department of Justice of the Commonwealth of Puerto Rico, on behalf of the Defendants, filed a notice of the automatic stay in the Commonwealth of Puerto Rico's Title III case. *Notice of Automatic Stay and Procedures for Filing Mots. for Relief from Automatic Stay in the Commonwealth of Puerto Rico's Title III Case* (ECF No. 194) (*Notice of Stay*). That same day, Mr. Gómez-Cruz filed a response in opposition to the notice of stay. *Resp. in Opp'n to Notice of Stay* (ECF No. 197)

2

(*Pl's. Resp*.). On August 29, 2018, Mr. Gómez-Cruz filed a motion reiterating the relief he requested in his previous motion. *Mot. Requesting Order Reiterating Relief Requested in the Mots. At Dockets 191, 192, and 193* (ECF No. 198).

### B. Factual Background[1]

As part of the settlement agreement reached by the parties on December 28, 2016, the Plaintiffs were required to submit debt certifications from several Puerto Rico government agencies, including from the CRIM. *Pl's. Mot*. at 1. Once the certifications were submitted, any outstanding debts owed these agencies would be deducted from the amount payable to the Plaintiffs at settlement. *Id*. In the case of Mr. Gómez-Cruz, a check was issued to the CRIM in the amount of $1086.79, which was received by the CRIM on March 10, 2017. *Id*. The money was to be credited to Mr. Gómez-Cruz's account at the CRIM as of March 27, 2017. *Id. at 2*.

However, email communications between the CRIM and Mr. Gómez-Cruz's counsel revealed that Mr. Gómez-Cruz owed $185.47, not $1086.89, as the Defendants originally calculated and deducted from his settlement award. *Id*. On March 28, 2017, counsel for the CRIM suggested that the $901.32 difference could either be applied to future debts, or Mr. Gómez-Cruz could provide a check in the amount of $185.47 within thirty days, and the Treasury Department would substitute it for the original check. *Reiterating Mot*. (ECF No. 192) Attach. 1 (*Ex. 1*) *Email String* at 9 (Mar. 27, 2017 to Sept. 14, 2017) (*Email String*). Ultimately, arrangements were made for the Puerto Rico Treasury Department to issue another

---

[1] The facts are undisputed.

3

check to the Plaintiff in the amount of $901.32. *Pl's. Mot.* at 2. However, the Puerto Rico Treasury Department never issued the check, and on June 19, 2017, an attorney for the Department of Justice wrote that "it is highly probable that the payment will not be made since this is a PROMESA pre-petition debt." *Email String* at 3. The Treasury Department never refunded Mr. Gómez-Cruz his overpayment, and on March 15, 2018, the Defendants filed a notice of stay. *Pl's. Mot.* at 3.

## II.   POSITIONS OF THE PARTIES

### A.   Plaintiff's Motion

In his motion requesting reimbursement, Mr. Gómez-Cruz states that the attorneys to both parties agreed that the Treasury Department would reimburse him by check for the overpayment to the CRIM. *Pl.'s Mot.* at 1-2. According to Mr. Gómez-Cruz, several communications were exchanged between March and September of 2017, but no check issued. *Id.* at 2. On September 20, 2017, Hurricane Maria hit the Island and all communications on the issue ceased. *Id.* On February 14, 2018, counsel to Mr. Gómez-Cruz emailed Attorney Diaz of the Department of Justice inquiring into the status of payment. On February 20, 2018, Attorney Diaz replied, stating that she would find out the status with the Department of the Family. *Id.* at 3. After that, according to Mr. Gómez-Cruz, no response was received. *Id.* Mr. Gómez-Cruz maintains that he has "exhausted all extrajudicial avenues in order to resolve this matter, all while taking into consideration the hiatus caused by the impact of Hurricane Maria. But after nearly a calendar year, plaintiff Carlos Gómez-Cruz is owed a significant sum of money." *Id.* at 3.

4

### B. Defendants' Notice of Automatic Stay

The Department of Justice of the Commonwealth of Puerto Rico filed a notice of the Title III automatic stay on behalf of the Defendants, stating that on May 3, 2017, the Commonwealth filed a petition with the United States District Court for the District of Puerto Rico under Title III of PROMESA, commencing its Title III case. *Notice of Stay* at 1. The Department of Justice states:

> [T]he commencement of the Title III case operates as an automatic stay of actions against the Commonwealth, including the . . . continuation of a judicial . . . action . . . against the Commonwealth or against an officer or inhabitant of the Commonwealth that was . . . commenced before the commencement of the Title III case, or to recover a claim against the Commonwealth or against an officer . . . that arose before the commencement of the Title III case.

*Id.* at 2.

The Department of Justice included in its notice the applicable Case Management Procedures for filing motions for relief from the Title III stay, as governed by the Financial Oversight and Management Board for Puerto Rico (the Oversight Board). *Id.* at 3. Paragraph III.Q of the Case Management Procedures requires that a party give fifteen days' notice to the Oversight Board before filing a stay relief motion, during which time the party "shall meet and confer to attempt to resolve . . . the request for relief." *Id.* at 11. The Department of Justice further states that "if a party does not comply with Paragraph III.Q of the Case Management Procedures prior to filing a Stay Relief Motion, and cannot show exigent circumstances, the court will deny the stay relief motion without prejudice until such party has complied with the Case Management Procedures." *Id.*

5

### C. Plaintiff's Response

Mr. Gómez-Cruz filed a response in opposition to the notice of stay, arguing that the automatic stay under PROMESA should not apply here. *Pl.'s Resp.* at 5. Mr. Gómez-Cruz contended that the Commonwealth is still refusing to issue a check for the difference of a payment it already made, not for a new payment in resolution of a pending claim. *Id.* The Plaintiff argues that he "is merely requesting that the defendants correct an *error of their own making* in issuing a pre-petition payment to plaintiff Gómez-Cruz, and re-issue a check for the correct amount." *Id.* (emphasis in original).

Mr. Gómez-Cruz also argues that the doctrine of laches and "other equitable considerations" weigh in favor of not applying the automatic stay to the overpayment owed to him. *Id.* He argues that ten months passed between the Commonwealth's Title III petition and the Defendants' notice of stay during which time the Defendants represented to him that they would resolve the matter. *Id.* According to Mr. Gómez-Cruz, "it would be inequitable for the Commonwealth of Puerto Rico to avail itself of the automatic stay under PROMESA under these circumstances," especially because the Commonwealth repeatedly indicated to Mr. Gómez-Cruz that it planned to re-issue a check. *Id* at 5-6. Mr. Gómez-Cruz cites *Job v. Calder,* 907 F.2d 953, 956–57 (10th Cir.1990) and *In re Smith,* 876 F.2d 524 (6th Cir.1989) in support of his argument that it would be inequitable to apply the automatic stay given the unreasonable delay in the Commonwealth asserting its rights. *Id.* at 6.

### III. DISCUSSION

The question before the Court is narrow: whether the Title III stay applies to money the Commonwealth owed to reimburse an overpayment under a settlement agreement executed before the start of the Title III case. Mr. Gómez-Cruz argues that the Title III stay does not apply because the payment is a reimbursement of a past overpayment, not a new payment in settlement of a pending claim. The Defendants have not argued why the Title III stay applies in this case. Their notice of stay only asks the Court to take notice that the Commonwealth filed a Title III petition that operates as an automatic stay of actions against the Commonwealth, and to take notice of the case management procedures governing those seeking relief from the stay. *See Notice of Stay* at 1-2.

The Puerto Rico Oversight, Management, and Economic Stability Act, 48 U.S.C. §§ 2101–2241 ("PROMESA") established a Financial Oversight and Management Board to help the Commonwealth "achieve fiscal responsibility and access to the capital markets." PROMESA § 101(a). To help achieve this goal, PROMESA includes a temporary, automatic stay for liability claims against the Commonwealth. Section 362(a) of the Bankruptcy Code is made applicable by § 301(a) of PROMESA, and provides

> An automatic stay is applicable to the commencement or continuation of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before commencement of the case under Title 11, or to recover a claim against the debtor that arose before the commencement of the case under Title 11. Similarly, subsection 362(a)(6) automatically stays any act to collect, assess, or recover a claim against the debtor arising before the petition.

7

*Ruiz-Colon v. Rodriguez Elias,* No. CV 17-02223-WGY, 2018 WL 2041964, at *2 (D.P.R. Apr. 30, 2018).

The Court "has the authority to determine whether the automatic stay is applicable." *Betancourt-Rivera v. Vazquez-Garced*, No. 17-2040 (FAB), 2018 WL 2246671, 2018 U.S. Dist. LEXIS 84144, at *6 (D.P.R. May 16, 2018) (citing *Chao v. Hospital Staffing Services Inc.*, 270 F.3d 374, 384 (6th Cir. 2001)). "Although the First Circuit Court of Appeals has not addressed this issue, bankruptcy courts within this circuit concur that '[t]he court in which the litigation claim to be stayed is pending has jurisdiction to determine not only its own jurisdiction but also the more precise question whether the proceeding pending before it is subject to the automatic stay.'" *Id.* (quoting *In re Martinez,* 227 B.R. 442, 444 (Bankr. D.N.H. 1998)).

Courts have grappled with the breadth of the stay under PROMESA as they endeavor to ensure parties are "afforded judicial redress without frustrating the debt-restructuring scheme set forth in PROMESA", interests that must be reconciled. *Id.* at 370. PROMESA does not clearly define what constitutes "enforce a claim against the debtor," but "[t]he Court has previously held that some cases fall outside the scope of the 'enforce a claim' language." *Guadalupe-Baez v. Pesquera*, 269 F. Supp. 3d 1, 2 (D.P.R. 2017), *appeal dismissed*, No. 17-2117, 2018 WL 2328442 (1st Cir. Feb. 7, 2018).

In making this determination, courts have looked at factors such as whether PROMESA contemplated the stay to apply to certain types of cases, whether the plaintiff seeks monetary or injunctive relief, and whether the Commonwealth of

8

Puerto Rico would be responsible for the cost of litigation and the payment of a potential award. *See id.* at 370; *Cano–Rodríguez v. De Jesús–Cardona*, No. 16–1532 (1st Cir. Nov. 27, 2017); *Guadalupe-Baez*, 269 F. Supp. 3d at 2. For example, when the First Circuit stayed the appeals in several § 1983 cases, it based its decision on its view that a claim for monetary damages is a liability claim, recovery from which is stayed under PROMESA. *Betancourt-Rivera,* 314 F. Supp. 3d at 370 (citing *Cano–Rodríguez v. De Jesús–Cardona*, No. 16–1532 (1st Cir. Nov. 27, 2017); *Besosa–Noceda v. Miranda–Rodríguez*, No. 16–2117 (1st Cir. Jan 23, 2018).

In contrast, in *Colon-Colon v. Negron-Fernandez,* the District Court for the District of Puerto Rico held that the Title III stay does not apply to the enforcement of an existing settlement agreement when a Commonwealth actor has been sued in his individual capacity.[2] No. 14-1300 (GAG), 2018 WL 2208053, at *4 (D.P.R. May 14, 2018). In *Colon-Colon*, Judge Gelpi disagreed with Judge Young's holding in *Ruiz-Colon* that PROMESA "contemplated the stay of suits against government officials in their personal capacity, much less the enforcement of settlements against these officials entered before Title III." *Id.* at 4. Judge Gelpi reasoned that "[e]ven if the

---

[2] Whether the stay applies to cases in which plaintiffs are suing defendants in their official and personal capacity remains unsettled. In *Guadalupe-Baez v. Pesquera*, 269 F. Supp. 3d 1 (D.P.R. 2017), Judge Gelpi held that the PROMESA stay does not block a plaintiff from suing a Commonwealth actor under § 1983 in his personal capacity because the Attorney General has discretion to decide whether to defend and indemnify the Commonwealth actor, and if the Attorney General were to decline representation, the plaintiff's claim would continue against the individual. *Id*. at 3. In *Ruiz-Colon v. Rodriguez Elias*, No. 17-02223-WGY, 2018 WL 2041964 (D.P.R. Apr. 30, 2018), Judge Young disagreed, concluding that "these are the types of suits contemplated by PROMESA that require an automatic stay because the defense is funded by the Commonwealth of Puerto Rico and its treasury." *Id.* Judge Young reasoned that "[w]hether or not the Plaintiffs are suing the Defendants in their individual capacities, the Commonwealth of Puerto Rico may still bear the costs of litigation . . . ." *Id.* 2018 WL 2041964, at *4. The Court does not need to resolve this decisional conflict.

9

practical arrangement has been for the Commonwealth to pay the plaintiff directly on the government official's behalf, the practical arrangement does not change [that] the party indebted to the plaintiff is the government official, not the Commonwealth representing the government official." *Id.*

This case more closely resembles *Colon-Colon*. In both *Colon-Colon* and here, the settlement agreement was reached before the Title III case commenced. However, unlike *Colon-Colon*, in which the court considered whether the Commonwealth or the defendants in their individual capacities should bear the cost of paying the settlement, in this case, the distinction is irrelevant. The Defendants have already borne the cost of the settlement; the money Mr. Gómez-Cruz asks the Commonwealth to return is his own property. As Mr. Gómez-Cruz states, he is "merely requesting that the defendants correct an error of their own making in issuing a pre-petition payment . . . and re-issu[ing] a check for the correct amount." *Pl.'s Mot.* at 5.

Although no courts have held that it applies specifically to PROMESA, the principle of recoupment—an exception to the automatic stay in bankruptcy cases based on equitable principles—is illustrative. Recoupment is defined as "the satisfaction of an obligation by crediting against it of a reciprocal obligation arising from the *same transaction*, typically the same contract." *In re Holyoke Nursing Home Inc.*, 273 B.R. 305, 311 (Bankr. D. Mass. 2002) (emphasis in original), *subsequently aff'd sub nom.*, 372 F.3d 1 (1st Cir. 2004) (quoting *In re Women's Tech. Inst., Inc.*, 200 B.R. 77, 80 (Bankr. D. Mass. 1996)). "[B]oth debts must arise out of a single integrated transaction so that it would be inequitable for the debtor to enjoy the

benefits of that transaction without also meeting its obligations." *Id.* "Recoupment . . . is intended to permit judgment to be rendered that does justice in view of the one transaction as a whole." *United Structures of America, Inc. v. G.R.G. Engineering, S.E.,* 9 F.3d 996, 999 (1st Cir.1993); *see also* 4 COLLIER ON BANKRUPTCY ¶ 553.03, at 553–17 (Lawrence P. King, ed., 15th ed. 1993) (the point of recoupment is to "arriv[e] at a just and proper liability" on the plaintiff's claim). It is well-settled that recoupment is outside the scope of the automatic stay in a bankruptcy proceeding pursuant to 11 U.S.C. § 362(a). *Id.* (citing *United Structures*, 9 F.3d at 999; *Sims v. United States Dep't of Health and Human Servs. (In re TLC Hosp., Inc.),* 224 F.3d 1008, 1011 (9th Cir. 2000); *Holford v. Powers (In re Holford),* 896 F.2d 176, 179 (5th Cir. 1990); *First Union Nat'l Bank of Florida v. Abbey Fin. Corp. (In re Abbey Fin. Corp.),* 193 B.R. 89, 94 (Bankr. D. Mass. 1996)).

Here, as in a recoupment, the overpayment arises from the same transaction as the settlement agreement. Although the mechanics of recoupment differ slightly from a reimbursement,[3] the equitable basis for the exception from the automatic stay applies with equal force. For the Commonwealth to enjoy the benefits of the settlement agreement while retaining a portion of Mr. Gómez-Cruz's own settlement award it withheld in error would be unjust.

The Court concludes that the Defendants' Notice of Automatic Stay and Procedures for Filing Motions for Relief from Automatic Stay in the Commonwealth

---

[3] In a recoupment, a debt is credited against a reciprocal obligation arising from the same transaction. *In re Holyoke Nursing Home Inc.,* 273 B.R. at 311. Here, the obligation is not reciprocal; it is the responsibility of the Defendants.

11

of Puerto Rico's Title III Case (ECF No. 194) does not bar the Plaintiff's Motion Requesting Order (ECF No. 192) and the Court GRANTS the Plaintiff's Motion Requesting Order (ECF No. 192). The Court DISMISSES as moot Plaintiff's Motion Requesting Order Reiterating Relief Requested in the Motions at Dockets 191, 192, and 193 (ECF No. 198).

The Court ORDERS the Commonwealth of Puerto Rico to reimburse Plaintiff Carlos Gómez-Cruz in the amount of $901.32.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 4th day of October, 2018